UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 7:18-CV-00109-EBA

PATRICIA LYNN TACKETT,                                          PLAINTIFF,

V.                        **MEMORANDUM OPINION AND ORDER**

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,                               DEFENDANT.


This is an action in which the plaintiff, Patricia Lynn Tackett, seeks judicial review of

an opinion denying her applications for Title II disability insurance benefits and Title XVI

supplemental security income. She argues that the Administrative Law Judge [ALJ] erred in

two ways: first, in declining to give the opinions of two treating physicians controlling weight

and, second, by articulating a residual functional capacity without a proper standing. The

matter is now before the Court on the parties' cross-motions for summary judgment. For the

reasons explained more fully below, the undersigned finds that the residual functional

capacity determined by the ALJ is not fully supported by substantial evidence. As a result,

the Plaintiff's motion for summary judgment will be granted and the Defendant's, denied.


**PROCEDURAL HISTORY**

Plaintiff was 39 years old on the alleged onset date of disability and 47 years and 7

months old on the date of the ALJ's decision. She has a high school education and past

relevant work as a nursing assistant. On September 21, 2015, Tackett filed an application for

Title II disability insurance benefits and Title XVI supplemental security income, alleging

disability beginning April 1, 2015 due to shoulder and knee problems. Her claims were denied

initially and again upon reconsideration. After a hearing before an ALJ, her applications were denied by a decision dated March 27, 2018. Then, on June 27, 2018, the Appeals Council denied review, making the ALJ's determination the final agency decision.  She filed this action seeking judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

In denying her claims, the ALJ followed the Commissioner's five-step sequential evaluation process for disability claims. *See* 20 C.F.R. § 404.1520(a)(4). In his decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020.  At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability. At Step 2, the ALJ found Plaintiff suffered from the following severe impairments: left knee medial meniscus tear/ACL insufficiency, right knee ACL, and right shoulder tendinosis. At Step 3, the ALJ found that Plaintiff does not have an impairment or combination or impairments that meets or equals one listed at 20 C.F.R. Part 404, Subpart P, App'x 1. The ALJ determined that Plaintiff has the residual functional capacity to perform light work, except she can:

> stand up to 8 hours; sit up to 6 hours; occasionally push and pull with the lower extremities bilaterally; occasionally reach overhead with the right non-dominant upper extremity; frequently reach in all other directions with the non-dominant right upper extremity; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance and stoop; occasionally kneel and crouch; never crawl. Additionally, the claimant must avoid even moderate exposure to extreme cold, vibration, and hazards (which are unprotected heights and moving mechanical parts).

At Step 4, the ALJ found that Plaintiff is unable to perform any past relevant work. At Step 5, the ALJ found, based on vocational expert ("VE") testimony, that Plaintiff is capable of performing work within the light exertional level as a cashier, salesclerk and shipping/receiving clerk.  She could also perform work within the sedentary exertional level

as inspector, charge account clerk, and document clerk.  Thus, the ALJ found Plaintiff not disabled.

## LEGAL STANDARD

Pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), this Court may review the record for the limited purpose of inquiring into whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971). "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 229 (1938)); *Sias v. Secretary*, 861 F.2d 475 (6th Cir. 1988).  In conducting its review, a court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Similarly, an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *See Ulman*, 693 F.3d at 714.  Even if the Court were to resolve the factual issues differently, the ALJ's decision must stand if supported by substantial evidence. *See Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990).

## ANALYSIS

In this action, Tackett asserts two errors by the ALJ which resulted in a finding not properly supported by substantial evidence: first, in declining to give the opinions of two treating physicians controlling weight and, second, by articulating a residual functional capacity without a standing limitation supported by the evidence. Because the Court finds merit with the second argument, a remand is appropriate.

### I.

The plaintiff first argues that the ALJ's RFC determination is not supported by substantial evidence where he failed to follow the treating physician rule when weighing the opinions of Plaintiff's treating orthopedic surgeon, Rob Royalty, M.D., and primary care physician, Jack Kendrick, M.D. When arriving at an RFC based upon his review of the record, the ALJ determined that the plaintiff can perform light work, except the plaintiff can:

> stand up to 8 hours; sit up to 6 hours; occasionally push and pull with the lower extremities bilaterally; occasionally reach overhead with the right non-dominant upper extremity; frequently reach in all other directions with the non-dominant right upper extremity; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance and stoop; occasionally kneel and crouch; never crawl. Additionally, the claimant must avoid even moderate exposure to extreme cold, vibration, and hazards (which are unprotected heights and moving mechanical parts).

The plaintiff takes issue with the ALJ's failure to incorporate several limitations that her treating doctors considered to be appropriate. She believes that ALJ should have included a restriction that she be able to lie down during a hypothetical 8-hour workday in excess of typical breaks, that she should could sit up to 8 hours in an 8-hour workday, but could stand

or walk no more than 1 hour in an 8-hour workday, that she would need to take unscheduled

breaks and could only occasionally lift less than 10 pounds and would have limitations with

repetitive reaching, handling, or feeling.

In explaining his reasoning for the weight given to the opinions of Dr. Royalty and

Dr. Kendrick, the ALJ stated:

> The undersigned gives little weight to Dr. Royalty's assessment because it is
> not consistent with the evidence. There is no evidence to support the limitation
> of lifting and carrying less than 10 pounds.  In addition, Dr. Royalty does not
> have disability program knowledge.

[R. 11-1, at 25].

> The undersigned gives little weight to Dr. Kendrick's assessment because it is
> not supported by medical signs or lab findings.  Dr. Kendrick's physical
> examinations have shown full range of motion with no deformities, edema, and
> erythema of the extremities (Exhibit 10F/5).  In addition, he has a relatively
> short treatment relationship with the claimant.  Furthermore, he does not have
> disability program knowledge.

[R. 11-1, at 26].

The ALJ did, however, give "partial weight" to the opinion of Dr. Donna Sadler,

M.D.  So, the question presented for this court's review is whether the ALJ gave sufficient

reasons for the weight accorded to the treating physicians in determining an RFC.  A review

of the record reveals that he did, and the plaintiff's first claim of error is without merit.

The agency regulations applicable to the instant case lay out certain factors that an

ALJ must consider when evaluating a medical opinion.[1] *See* 20 C.F.R. § 404.1527(c).  A

treating physician's opinion is given controlling weight when it "is well-supported by

---

[1] For claims filed on or after March 27, 2017, the agency's regulations have been amended to
provide that an ALJ is not required to "defer or give any specific evidentiary weight, including
controlling weight, to any medical opinion(s) . . ., including those from [a claimant's] medical
sources." *See* 20 C.F.R. §§ 404.1527, 404.1520c(a) (2017); *see also Revisions to Rules Regarding
the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5852-60 (Jan. 18, 2017) (final rules).

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, when a treating physician's opinion is not given "controlling weight," it is still entitled to deference and the ALJ must assess the following factors to determine how much weight to afford the opinion: the length of the treatment relationship, the frequency of examination by the treating physician, the medical evidence supporting the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). This has been interpreted to mean that "[a]lthough the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion' — not an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (unpublished) (citation omitted). The ALJ's decision must therefore contain specific reasons supported by evidence in the record for the weight given to an opinion. SSR 96-2p. As such, an ALJ must simply provide good reasons for the weight he gives a medical opinion. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009). The Court will reverse and remand a denial of benefits, even though "substantial evidence otherwise supports the decision of the Commissioner," when the ALJ fails to give good reasons for discounting the opinion of a claimant's treating physician. *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 543–46 (6th Cir.2004).

Clearly, the record does not reveal the ALJ relying solely on the opinions of plaintiff's treating physicians, Dr. Royalty and Dr. Kendrick, but considered evidence from a variety of sources. For instance, the ALJ considered the plaintiff's self-reported symptoms and activities

of daily living.  The plaintiff reported that she has a driver's license and can drive short distances of about 15–20 minutes.  She reported constant pain in both knees but describes her left knee as worse and will give out on occasion which has, in the past caused her to fall.  She underwent left knee meniscus tear surgery and follow-up physical therapy.  However, she reported that her left knee has worsened since.  She reported that her physician recommended right knee as well.   She described the knee pain being worse when she climbs stairs.  The plaintiff also described right shoulder pain that radiates into her arm. It is worse upon lifting heavy objects.   She reported experiencing hand numbness.   Although her doctor recommended a scope, she declined the procedure.  She reported that chiropractic treatment helped her knees and shoulder for a while.  She described having trouble bending, reaching overhead, crawling, lifting and walking, but is able to walk 10 minutes before needing to sit and rest. However, her feet will go numb when sitting.  She has to prop up her knee due to swelling, and also uses ice to help manage swelling. She applies ice to her knees and shoulder three times a day for 15–20 minutes at a time.   She can then sit 15–20 minutes before needing to get up and move around. She cannot lift or carry more than 5 pounds and struggles to lift a gallon of milk. She has trouble texting due to hand numbness.  She has difficulty getting out of bed due to stiffness. Her boyfriend helps her dress and helps her with chores.  She usually sits and reads.  She can prepare microwavable frozen dinners, that do not require a lot of standing.

In recounting the treatment and findings of Dr. Kendrick, M.D., and Dr. Royalty, M.D., the ALJ noted evidence of bilateral knee pain and that the claimant twisted her right knee in 2013, with subsequent findings of major cartilage derangement with the evidence showing improvement following conservative treatment of pain medication, physical therapy,

steroid injections, and a knee brace, until 2014. [R. 11-1, at 524]. Dr. Jack Kendrick treated the claimant for osteoarthritis but noted no abnormalities on examination to the right knee. [R. 11-1, at 524]. In addition, the medical records note Tackett's complaints of an aching left knee in April 2015, and orthopedic physician, Dr. Royalty, M.D., noted no effusion or warmth, some tenderness to palpation along the medial joint line, negative ligamentous instability, and intact sensation. [R. 11-1, at 524]. An x-ray of the left knee in April 2015 revealed no acute osseous injury and no sizeable joint effusion. An MRI of the left knee from June 2015 showed an ACL tear, medial meniscus tear, and joint effusion. Dr. Royalty diagnosed the claimant with sprain and strain of the cruciate ligament and a tear of the medial cartilage or meniscus of the left knee. Dr. Royalty treated her with steroid injections with little improvement, and recommended arthroscopy and meniscal surgery. The claimant underwent left knee arthroscopic partial medial meniscectomy in July 2015, and was treated with anti-inflammatory medications, physical therapy, and chiropractic treatment. She reported persistent pain, swelling, and instability of the knee, and in September 2015, Dr. Royalty noted that she may require ACL reconstruction surgery. She continued to report knee pain at her 3-month follow up appointment in December 2015, where Dr. Royalty noted that she was still attending physical therapy and taking anti-inflammatories. He did not recommend surgery and the claimant sought no further treatment from Dr. Royalty.

Dr. Kendrick managed the claimant's left knee with pain medication after March 2016 and has not noted abnormalities of the knee. His examinations have shown full range of motion with no deformities, edema, and erythema of the extremities.

The ALJ commented on the plaintiff's history of shoulder pain, since an injury at work in June 2014. An MRI of the right shoulder from October 2014 showed medial arch rotator

cuff impingement related to AC joint hypertrophy with supraspinatus tendinosis. The evidence showed Tackett's shoulder has been treated conservatively with pain medication, injections, and chiropractic treatment. She has not received treatment with Dr. Royalty since January 2015. Primary care physician, Dr. Kendrick has treated her for osteoarthritis, but has not noted any abnormalities of the shoulder.

As in the case of *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009), although the ALJ's statements for the weight given to Drs. Royalty and Kendrick are brief, they reach several of the factors that an ALJ must consider when determining the weight to be given to a treating source, including the length of the treatment relationship, the frequency of the examination, the nature and extent of the treatment relationship, and the supportability of the opinion. In *Allen*, the ALJ simply remarked that a treating physician, Dr. McCord, merely affirmed that it "might be reasonable to conclude the claimant's symptoms had remained unchanged since December of 2003, an opinion that the undersigned found to be speculative since Dr. McCord had not seen the claimant for the first time until some two years later, on December 8, 2005." *Id*. at 651. Like the ALJ in *Allen*, the ALJ in the instant case complied with his obligations under the regulations to provide good reasons for the weight given to the various physicians in this case. The ALJ explained the plaintiff's history of care including a reference to objective evidence of record, including the fact that Dr. Jack Kendrick noted no abnormalities on examination to the right knee, [R. 11-1, at 524], that Dr. Royalty, M.D., noted no effusion or warmth, some tenderness to palpation along the medial joint line, negative ligamentous instability, and intact sensation, [R. 11-1, at 524], and that Dr. Royalty ultimately noted that she was still attending physical therapy and taking anti-inflammatories. He did not recommend surgery and the claimant sought no further treatment from Dr.

Royalty. Subsequently, Dr. Kendrick managed the claimant's left knee with pain medication and noted no abnormalities of the knee. His examinations showed full range of motion with no deformities, edema, and erythema of the extremities. Finally, the evidence considered by the ALJ showed the claimant's shoulder has been treated conservatively with pain medication, injections, and chiropractic treatment, and that her primary care physician, Dr. Kendrick treated her for osteaoarthritis, but has not noted any abnormalities of the shoulder.

So, the record reflects that the ALJ gave sufficient reasons for the weight accorded to Drs. Royalty and Kendrick, and in doing so addressed the supportability of their opinions based on references to the objective evidence of record, explained why they were not supported by medical signs or lab findings, including the fact that physical examinations have shown full range of motion with no deformities, edema, and erythema of the extremities, and the relatively short treatment relationship Tackett had with Dr. Kendrick.

II.

The claimant's second argument is that the ALJ's RFC determination is not supported by substantial evidence because, after affording the opinion of Dr. Sadler partial weight, he failed to accurately include that physician's standing limitations in the RFC. A discussion of the evidence in light of the parties' obligations relevant to the determination of an RFC leads to the conclusion that the ALJ's RFC is not supported by substantial evidence. The evidence in the case of the plaintiff's limitations is as follows:

Tackett describes her own physical limitations, stating that she is able to walk only 10 minutes before needing to sit and rest. She has difficulty getting out of bed due to stiffness, however, her boyfriend helps her dress, and helps her with chores. Her daily activities involve

sitting and readying, but she relates that she can can prepare microwavable frozen dinners, that do not require a lot of standing.

Dr. Robert Royalty, Orthopedic surgeon, expressed his opinion that Tackett can sit 8 hours in an 8-hour workday, but stand and walk only 1 hour in an 8-hour workday.

Dr. Kendrick opined that she would need to lie down during a hypothetical 8-hour workday in excess of typical breaks, is unable to walk a city block without pain or the need to rest. He believes that she can sit a total of 1 hour in an 8-hour workday, *stand/walk a total of 1 hour in an 8-hour workday,* and will need to take breaks during an 8-hour workday every 30 minutes for about 15 minutes.

Dr. Donna Sadler, M.D., the state agency physician, opined that the plaintiff can lift and carry 20 pounds occasionally, 10 pounds frequently. Dr. Sadler opined that Tackett is able to stand and walk a total of 4 hours in an 8-hour workday.

In arriving at an RFC, the ALJ stated that he gave partial weight to Dr. Sadler's assessment, finding that the evidence at the hearing level supported the finding that the plaintiff can perform light work, except the plaintiff can:

> *stand up to 8 hours*; sit up to 6 hours; occasionally push and pull with the lower extremities bilaterally; occasionally reach overhead with the right non-dominant upper extremity; frequently reach in all other directions with the non-dominant right upper extremity; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance and stoop; occasionally kneel and crouch; never crawl. Additionally, the claimant must avoid even moderate exposure to extreme cold, vibration, and hazards (which are unprotected heights and moving mechanical parts).

An RFC is an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work

schedule." SSR 96-8; *see Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir.1992).   Therefore, Tackett's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).  The burden is on the claimant to establish her RFC. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015).  However, it is the ALJ's responsibility to determine Tackett's RFC "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir.2000); 20 C.F.R. §§ 404.1545(a); 404.1546(c). Finally, the ALJ's RFC determination must be supported by some medical evidence. *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010).

In the instant case, Tackett's RFC is not supported by substantial evidence for the simple reason that none of the medical evidence of record provides for an ability to stand up to 8 hours in an 8-hour workday.  For example, as explained above, Drs. Kendrick and Royalty both say that she can stand for no more than 1 hour in an 8-hour workday.  Dr. Sadler, the state agency physician, opined that Tackett can stand no more than 4 hours in an 8-hour workday.  Finally, Tackett relates limitations that only allow her to "walk only 10 minutes before needing to sit and rest," but can "prepare microwavable frozen dinners, that do not require a lot of standing."  In short, there is no medical evidence allowing the ALJ to determine an RFC that reflects Tackett having the ability to stand up to 8 hours in an 8-hour workday.   Because the ALJ's RFC determination is not supported by some medical evidence, it is not properly supported by substantial evidence. *See Myers*, 721 F.3d at 527; *Wildman*, 596 F.3d at 969.

The Commissioner contends that any error by the ALJ is harmless because the jobs that he found Plaintiff could perform at step five included some 72,510 jobs in the national economy. This reasoning is flawed. Although the ALJ believed that Tackett could perform jobs within the light exertional category, such as cashier, salesclerk and shipping clerk, jobs within the light exertional level generally require a claimant have the ability to stand or walk, "off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. As stated above, the maximum allowed by the evidence provides for the ability to stand or walk, in the opinion of Dr. Sadler, up to 4 hours in an 8-hour workday. In addition, the Commissioner argues that the ALJ's opinion is supported by substantial evidence that Tackett is not disabled because the vocational expert also opined that based upon the RFC, Tackett could perform three sedentary jobs: that of inspector, charge account clerk, and document clerk. Each requires standing or walking no more than about 2 hours of an 8-hour workday. Perhaps upon reconsideration the ALJ will find that Tackett has the ability to stand and or walk no more than 4 hours in a 8- hour workday, consistent with Dr. Sadler's opinion. Such a determination, absent any error, would lend itself to a finding of not disabled, given that jobs in the sedentary category are appropriate for individuals whose restrictions allow them to stand or walk no more than 2 hours in an 8-hour workday. SSR 83-10. However, since the ALJ gave Dr. Sadler only "partial weight" vs "little weight" attributed to Drs. Royalty and Kendrick, the ALJ might determine an RFC that reflects a standing or walking limitation of something less than 2 hours but more than the 1 hour opined by Drs. Royalty and Kendrick. If so, such a determination would lend itself to a finding of "disabled." In either case, it is not for the court but for the ALJ to determine the standing restriction and thus determine the RFC for Tackett. The court is limited to reviewing the decision for substantial evidence or other

error. Thus, remand is appropriate to allow the ALJ to fashion an RFC that is properly supported by substantial evidence of record in the matter.

## CONCLUSION

Although the plaintiff has not shown that the ALJ failed to properly explain the weight given to two treating physicians in this case, the plaintiff has demonstrated that the RFC is not properly supported by substantial evidence, as the ALJ determined a standing limitation for Tackett that is not supported by medical evidence. As a result, the plaintiff is entitled to have this matter remanded to the ALJ for further consideration.

Therefore, for the reasons stated above,

IT IS ORDERED the decision of the Commissioner is REVERSED and this matter is REMANDED for further findings consistent with this opinion. A remand for insufficient findings is appropriate under § 405(g) sentence four, which provides appropriate relief when the evidence in the record is insufficient to support the Secretary's conclusions and further fact finding is necessary. Sullivan v. Finkelstein, 496 U.S. 617, 625-26 (1990); Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). Therefore, a remand is necessary to allow the Commissioner an opportunity to fully develop the factual record as to Plaintiff's standing limitation, if any; then the Commissioner will be able to review the record with all the facts available and make appropriate findings as to the same.

Signed August 28, 2019.



Signed By:
Edward B. Atkins
United States Magistrate Judge